[No. 9354. Department One. August 1, 1911.]

JOSEPH DURANTE, *Respondent,* v. GREAT NORTHERN
RAILWAY COMPANY, *Appellant.*[1]

MASTER AND SERVANT—FELLOW SERVANTS—SUPERIORS—VICE PRIN-
CIPALS. An expert handler of dynamite in sole charge of the blast-
ing work, who negligently caused a premature explosion, is a vice
principal and not a fellow servant of an inexperienced boy, engaged
for other duties, and who assisted him and was under his control in
the work of loading a blast, by express direction of the foreman.

APPEAL—REVIEW—CORRECT DECISION BASED ON ERRONEOUS GROUND.
Where errors involving a new trial are expressly waived, and the
only question is whether the evidence warrants the judgment, it is
immaterial that the decision of the trial court was based upon an
erroneous ground, if it was correct upon any theory of the evidence.

Appeal from a judgment of the superior court for Spo-
kane county, Hinkle, J., entered July 2, 1910, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained by an employee through a
premature explosion of dynamite. Affirmed.

*L. F. Chester* and *William A. Monten,* for appellant.

*Roche & Onstine,* for respondent.

PARKER, J.—This is an action to recover damages for per-
sonal injuries which the plaintiff claims resulted to him from
the negligence of the defendant in causing a premature ex-
plosion of dynamite while doing excavation work upon its
line of railway near the Cascade tunnel. A trial before the
court and a jury resulted in a verdict and judgment in
favor of the plaintiff. The defendant has appealed, contend-
ing that the trial court erred in denying its motions for non-
suit, for an instructed verdict, and for judgment notwith-
standing the verdict. Appellant also made a motion for a
new trial, but its attorneys have in their brief expressly
abandoned that motion, and say that "we do not care for a

[1]Reported in 116 Pac. 870.

new trial." We are therefore not concerned with any errors occurring in the cause which could only have that result.

There was competent evidence introduced in behalf of respondent sufficient to warrant the jury in believing the following: On October 19, 1907, appellant was engaged in improving its railway near the Cascade tunnel. In connection with this improvement, excavations were being made requiring a considerable amount of blasting with dynamite. This blasting was in the immediate charge and control of one Corea, who had the handling of the dynamite, prepared the blasts by loading dynamite into holes drilled into the rock for that purpose, and exploded the charges. He was the only man there doing that work. He was experienced in the work and had then been engaged in it for appellant for several months. This work occupied the larger part of his time. At other times he did whatever he was told to do by the foreman.

On October 19, 1907, at the time of the injuries occurring to the respondent, he had been employed for some time by appellant as water boy, a part of his duties being also to attend the brake on a small dump car used in the work. These were his only duties up to that time. He was then only nineteen years old and entirely without experience in the handling or use of dynamite. He only knew in a general way that it was dangerous, and had heard from the men that to cause the dynamite to come in sudden contact with a iron or steel instrument was dangerous as likely to cause an explosion.

A short time before the explosion causing respondent's injuries, he was attending the brake on the dump car not far from where Corea was at work preparing to load a hole with dynamite. Respondent was then called by Corea to come and help him. Respondent refused to go, and, as he says, because that was not his work and he was afraid. After repeating the request three or four times, Corea spoke to the foreman about it, when the foreman told respondent to help Corea, and when respondent again protested against doing

so, the foreman swore at him and peremptorily ordered him to go and help Corea. He then obeyed. A two-inch hole had been drilled in the rock about 22 feet deep, and under Corea's direction respondent put sticks of dynamite in the hole while Corea pushed them down with a wooden stick such as is usually used for that purpose. It was well known to persons of experience in the work that it was very dangerous to use an iron or steel rod for such purpose, because of the probability of causing an explosion thereby. After several sticks of dynamite had been put into the hole in this manner, Corea attached a cap and a fuse to another stick of dynamite, placed it in the hole, and tried to push it down with the wooden stick, but when about six feet down it stuck and could not be pushed any further with the wooden stick, and then, without any warning, Corea picked up a steel drill, being a long steel rod, and proceeded to use it for pushing the dynamite down, in the place of the wooden stick. As soon as respondent noticed that the steel rod was about to be so used, he started to run away, but the contact of the rod with the dynamite or the cap caused an explosion, resulting in respondent's injuries before he got any distance away. Corea was killed by the explosion. It is not contended that the act of Corea in using the steel rod was other than an act of gross negligence on his part. Indeed, it is admitted in appellant's brief that "It is exceedingly dangerous to use an iron or steel rod in doing this work."

The main contention of counsel for appellant is that Corea and respondent were fellow servants in this work, and hence that the negligence of Corea was not that of the appellant, his employer. It seems to us that this contention is not sound. It is true that it does not appear that Corea was the foreman in charge of the work as a whole, nor does it appear that he had any authority to employ or discharge men; but it does clearly appear that he had charge of this particular work, and that respondent was under his direction and control in handling the dynamite and preparing the blast. Noth-

ing could seem clearer than that the two were not at work there with equal authority, as to the control of one over the other. It is hardly conceivable that this nineteen year old boy, who had no experience in the handling or use of dynamite, was, under the circumstances here shown, assigned to this work with a man of the experience of Corea, who was and had been for months in charge of this work, and was evidently so employed by appellant because of such experience, without at the same time concluding that, as to the particular work they were engaged in, respondent was under the direction and control of Corea. The facts we have above summarized are practically undisputed, and to our mind clearly support the conclusion that the authority of Corea was such as to make him a vice principal and render his negligence the negligence of the appellant  The following decisions of this court support this view: *Allend v. Spokane Falls & N. R. Co.*, 21 Wash. 324, 58 Pac. 244; *Rush v. Spokane Falls & N. R. Co.*, 23 Wash. 501, 63 Pac. 500; *Howe v. Northern Pac. R. Co.*, 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949; *Sandquist v. Independent Tel. Co.*, 38 Wash. 313, 80 Pac. 539; *Tills v. Great Northern R. Co.*, 50 Wash. 536, 97 Pac. 737, 20 L. R. A. (N. S.) 434; *Olson v. Erickson*, 53 Wash. 458, 102 Pac. 400.

Counsel for appellant call attention to, and rely upon, the following decisions from this court: *Wilson v. Northern Pac. R. Co.*, 31 Wash. 67, 71 Pac. 713; *Jock v. Columbia & Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405; *Desjardins v. St. Paul & Tacoma Lumber Co.*, 54 Wash. 278, 102 Pac. 1034; *Magnuson v. Chicago, Milwaukee etc. R. Co.*, 58 Wash. 141, 107 Pac. 1043. But we think a reading of these decisions will show that in none of them was there any such authority and control on the part of the employee whose negligence caused the injury over the employee injured as is shown in this case. In the *Desjardins* case the negligent employee and the injured employee were both millwrights, and both skilled in the work in hand. It is true that the

negligent employee had some superiority of position, but we think he had no such control as Corea had over this respondent. In the other case relied upon we are unable to discover any material difference in authority between that of the injured employee and that of the employee whose negligence caused the injury. The holdings in those cases that the employees concerned were fellow servants we think does not militate against our holding here that Corea was a vice principal.

Counsel for appellant contended, in substance, in their reply brief that it was the theory of counsel for respondent, and so understood by the trial court, in the trial of the cause, that Corea was a vice principal solely because the handling of the dynamite by him was a nondelegable duty, and that counsel for respondent did not rely upon Corea's authority of superintendence and control as a ground of his vice principalship. It is now insisted that counsel for respondent should not be permitted to change their theory and rely upon the latter ground as well as the former. It is true that the trial court seems to have instructed the jury upon the theory first mentioned, and practically ignored the second. But it is not entirely clear from the record that respondent has not at all times also relied upon both grounds to show Corea's vice principalship. This matter might be of some concern here if we were only considering questions of error calling for a new trial. We have noticed that counsel for appellant have expressly waived all such errors and given us to understand that they did not want a new trial. Our concern here is to see whether or not the evidence as a whole warrants the conclusion that Corea was a vice principal. We think we are not called upon to confine respondent's counsel to any particular theory claimed by appellant's counsel to have been adopted upon the trial of the cause. Since the evidence supports the argument here made in respondent's behalf, based upon the theory of superintendence and control to show Corea's vice principalship, we do not feel warranted in ex-

cluding such theory simply because the trial court may have committed error in its instructions to the jury upon the theory of nondelegable duty, even though the trial court may have thereby indicated that no other theory of Corea's vice principalship was involved in the case. It is quite immaterial, under these circumstances, how the court instructed the jury. Such instructions might or might not result in a new trial, but would not determine the question of whether or not the evidence supports the verdict and judgment.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, and GOSE, JJ., concur.